# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PATRICIA KING and ERIC GIL,**

        **Plaintiffs,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:06-cv-435-Orl-22JGG**

**MY ONLINE NEIGHBORHOOD, INC.,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion:

> **MOTION:** **JOINT MOTION TO APPROVE SETTLEMENT (Doc. No. 55)**
>
> **FILED:** January 18, 2007
>
> ___
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

**I.  BACKGROUND**

Plaintiffs Patricia King and Eric Gil seek to hold Defendant My Online Neighborhood, Inc ["My Online"] liable for allegedly failing to pay them overtime wages and the minimum wage in violation of the Fair Labor and Standards Act of 1938, as amended, 29 U.S.C. § 216(b) ("FLSA"). Docket Nos. 34, 39. King and Gil have entered into settlement agreements with My Online. Docket Nos. 53-2, 53-3. On January 3, 2007, the Honorable Anne C. Conway referred the matter to this Court for issuance of a Report and Recommendation as to whether the settlement is a fair and reasonable

resolution of a bona fide dispute. Docket No. 54. The parties have also filed a joint motion to approve the settlement agreements. Docket Nos. 53, 55.

Under the terms of the settlements, Defendant has agreed to pay King $4,000 and Plaintiffs' counsel[1] $5,250; and to pay Gil $500 and Plaintiffs' counsel $5,250. Docket Nos. 53-2, 53-3. Plaintiffs' counsel will therefore receive a total of $10,500 in attorney's fees and costs for this case. *See id.*

In response to Judge Conway's order, the undersigned scheduled a hearing, and ordered Plaintiffs to file the billing records of Plaintiffs' counsel and evidence supporting the amounts to be paid to Plaintiffs and their counsel. Docket No. 56. The Court also asked the parties to explain why the amount to be paid to Plaintiffs' counsel was $5,250 in light of the small amount to be paid to Gil. The Court observed that in Gil's answers to the Court's interrogatories, Gil claimed that he was owed "$20,192.30 in overtime wages plus an additional $20,192.30 in liquidated damages, for a total of $40,384.61 plus reasonable attorneys' fees and costs." Docket No. 40-2 at 1, ¶ 6(e) (emphasis added).

On February 6, 2007, Plaintiffs' counsel filed support for the amounts claimed, including an affidavit in which Plaintiffs' counsel provides a detailed explanation of the reasons for the settlement and the breakdown of the settlement. *See* Docket No. 59-2. In his affidavit, Plaintiffs' counsel states that he will receive a total of $10,500 in attorney's fees and costs for this case, and that he could have attributed more of the fees and costs to King (who will receive $4,000 under the terms of the settlement), and less to Gil (who will receive only $500) in order to make the distribution *appear* more proportionate. *Id.* at 2. Instead, counsel chose to divide the fees and costs equally among the two

---

[1]King and Gil are represented by the same counsel.

Plaintiffs. *Id.* Counsel also states that the parties settled after conducting informal and formal discovery and "lengthy and detailed settlement discussions." *Id.* at 3. During discovery, My Online produced evidence that Gil was an exempt employee for the period of 2004 through August 14, 2005, and Gil discovered that his potential recovery would be far less than he originally claimed. *Id.* Gil therefore "acknowledged the limited damages to which he was entitled, and authorized [Plaintiffs'] counsel to settle his claims for a total $500." *Id.* at 4.

Counsel also attests that he regularly bills his clients at an hourly rate of $300 and that his associate, attorney Kelly Amritt (who is not listed as Plaintiffs' counsel), regularly bills clients at an hourly rate of $250. His ledger of the fees and costs in this case shows his hourly rate of $300 and Amritt's hourly rate of $200. Docket No. 59-3. Counsel expended a total of 64.8 hours (52.6 by Plaintiffs' counsel, and 12.2 by Amritt) for a total of $18,830 in attorney's fees. *Id.* at 9. Counsel further incurred $530 in costs for a total of $19,360 in fees and costs. *Id.* Plaintiffs' counsel also filed an affidavit from an uninterested attorney who opines that the time expended and hourly rates charged by Plaintiffs' counsel are reasonable in this matter. Docket Nos. 59-3, 59-4. Based on these documents and upon careful consideration of the pleadings and filings in this case, the Court cancelled the hearing; and now recommends that the joint motion to approve the settlements be granted and that the case be dismissed with prejudice.

## II.   THE LAW

### A.   Approval of Settlements

Congress enacted the FLSA to protect workers from low wages and long hours that can result from the inequality in bargaining power between employers and employees. The FLSA, therefore, provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be

liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be. . . ." 29 U.S.C. §216(b).  The FLSA's provisions are mandatory and, except in two narrow circumstances generally are not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The two circumstances in which FLSA claims may be compromised are claims that are 1.) supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(c) and 2.) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Before the Court may approve the settlement, it must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a bona fide dispute. *Id.* at 1354-55. If a settlement in an employee FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354. Where the employer offers the plaintiff full compensation on his FLSA claim, no compromise is involved and judicial approval is not required. *MacKenzie v. Kindred Hosp. East, L.L.C.*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003).

In determining whether the settlement is a fair and reasonable resolution, the Court adopts the factors used in approving the settlement of class actions:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). When considering these factors, the Court should keep in mind the "strong presumption" in favor of finding a settlement fair. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Moreover, the Court is aware, as the parties must also be, that a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir.1995), *citing Cotton*, 559 F.2d at 1330.

### B.   Awards of Reasonable Attorneys' Fees and Costs

An award of "reasonable attorneys' fee[s] . . . and costs" is mandatory under § 216(b) if the employer is held liable. Although the court is obligated to award the attorneys' fees, Congress's use of the word "reasonable" confers discretion upon the court to determine the amount of fees to be awarded. In determining the reasonableness of attorneys' fees pursuant to a fee-shifting statute, the lodestar generally is recognized as a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).[2]

Even a contested request for attorneys' fees "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The party seeking attorneys' fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill. *See id.* at 433, 437. Further, fee counsel must "supply the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988). Satisfactory evidence of the

---

[2] The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988).

prevailing market rate "at a minimum is more than the affidavit of the attorney performing the work," and must address rates actually billed and paid in similar lawsuits. *Id.* at 1299. Where the documentation is inadequate, the district court must still determine a reasonable fee, which it may do without further pleadings or an evidentiary hearing. *Id*. at 1303. This is because the court itself is an expert on the question and "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

In collective FLSA actions, the court has a duty to determine the reasonableness of the proposed attorneys' fees as part of the fairness determination. *See, e.g., Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). This makes sense, as most settlements of collective actions involve a lump sum settlement with an amount to be deducted for attorneys' fees. In such cases, it is necessary for the court to evaluate the overall fairness of the settlement and the benefit to the plaintiffs.

The FLSA does not require the court to assess the fairness of an agreed payment of attorneys' fees in settling an individual action. Indeed, the purpose of the fairness review is to ensure that an employer does not take advantage of an employee in settling his claim for wages, and not to ensure that the employee does not overcharge the employer. *See Lynn's Food Stores*, 679 F.2d at 1354. In an individual FLSA claim, where separate amounts are set forth for the payments of unpaid wages and payments for attorneys fees, the Court has greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' fee. The Court takes judicial notice of Judge Conway's order in *Perez v. Nationwide Protective Services*, Case 6:05-cv-328-ORL-22JGG (October 31, 2005), where she ruled that "[t]he Court notes that it has an obligation to ascertain the reasonableness of any

attorney fee award. However, an in depth analysis is not necessary unless the unreasonableness is apparent from the face of the documents."

The award of costs is made in accordance with 28 U.S.C. § 1920. *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1169 (S.D. Fla. 2003). In an FLSA action, it is error for a district court to award costs in excess of those permitted by § 1920. *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988) (district court erred in awarding expert witness fees under §216(b) that exceeded the amount allowed by § 1920). Likewise, a district court must identify reasons for denying costs to a prevailing party so that the appellate court has some basis to review whether the district court acted within its discretionary power. *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995).

### III.  APPLICATION

My Online, a Florida corporation, employed Plaintiffs as clerical workers. King worked for My Online from July 2005 through February 2006 as an account manager assisting with sales, customer service, and collection of past-due accounts. Docket No. 16-2. Gil worked for My Online from May 2004 through July 2006 as a systems consultant and account manager. Docket No. 40-2. Plaintiffs claimed that My Online failed to compensate them at the rate of one and one-half times their regular hourly rates for hours worked in excess of forty hours per week. Docket Nos. 34, 39. My Online denied these allegations, and asserted a number of affirmative defenses, including the defense that Plaintiffs were executive employees and therefore exempt from the overtime provisions of the FLSA. Docket No. 41 at 3. The parties also disputed the number of overtime hours worked by Plaintiffs. In their joint motion, the parties "agree that the instant action involves disputed issues." Docket No. 55 at 2. The Court therefore finds that there was a bona fide dispute as to liability.

In terms of fairness of the settlement, the parties were all represented by counsel. Counsel were obligated to vigorously represent their clients' rights. Based on the amount to be paid to Plaintiffs and the pleadings and filings in this case, there is no suggestion of collusion. Given My Online's affirmative defenses, Plaintiffs' probability of success was uncertain. The Court finds settlement of the action in favor of certainty was fair and reasonable. Further, the parties "agree that the settlement negotiated and reached by the [p]arties reflects a reasonable compromise of the disputed issues." Docket No. 55 at 2. The settlement is a fair and reasonable resolution of a bona fide dispute.

The Court independently reviewed the fees and costs ledger of Plaintiffs' counsel, and agrees that the number of hours worked appears reasonable. The high hourly rate charged by Plaintiff's counsel in this case ($300 per hour for lead counsel, and $250 per hour for Amritt) may exceed the reasonable hourly rate in the Orlando market for similar work performed by attorneys with similar qualifications and experience. Plaintiffs' counsel, however, will receive almost half of the fees and costs listed on his ledger. *See* Docket No. 59-3 at 9. The compromise properly reduced the high hourly rates. In addition, comparing the amount of the Plaintiff's recovery to the attorneys' fees to be paid and considering My Online's affirmative defenses, the Court does not find that the amount of attorneys' fees is grossly excessive. *See, e.g., Goss*, 248 F. Supp. 2d at 1169 (denying attorney's fees of more than $16,000 when plaintiff recovered $316 in back wages).

As there is no unreasonableness apparent from the face of the documents, the Court did not conduct an in-depth analysis of the attorney's fees sought or determine the market rate for Plaintiffs' counsel. Defendant joins in moving for the approval of the proposed settlement, and the Court finds it unnecessary to inquire into the reasonableness of the hourly rate charged by Plaintiff's counsel. The

Court accepts the parties' stipulation as to the reasonableness of the settlement agreements, including the amount of attorney's fees and costs.

Therefore it is **RECOMMENDED** that

1. The Joint Motion to Approve Settlement [Docket No. 55] be **GRANTED**;

2. The settlement agreements reached by the parties [Docket Nos. 53-2, 53-3] be approved;

3. The case be dismissed with prejudice; and

4. The Clerk be directed to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 20, 2007.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable Anne C. Conway
Counsel of Record
Courtroom Deputy